# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

LINDSEY G. BLANKENSHIP,    )
          )
      Plaintiff,    )
          )
      v.    )    **Case No. CIV-17-319-JHP-SPS**
          )
COMMISSIONER of the Social    )
Security Administration,    )
          )
      Defendant.    )

## REPORT AND RECOMMENDATION

The claimant Lindsey G. Blankenship requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was thirty-six years old at the time of the administrative hearing (Tr. 37). She completed four or more years of college, and has worked as a department store clerk, security guard, and security system monitor (Tr. 22, 264). The claimant alleges that she has been unable to work since January 11, 2016, due to right hip injury, ankle instability, hearing loss, and depression (Tr. 263).

### Procedural History

On February 26, 2016, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ B.D. Crutchfield conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 11, 2017 (Tr. 15-23). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made her decision at step four of the sequential evaluation. She found that the claimant had the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). The ALJ thus concluded that the claimant could return to her past work as a department store clerk, security guard, and security system monitor (Tr. 22).

## Review

The claimant alleges that the ALJ erred by: (i) failing to properly evaluate the medical opinions in the record, specifically with regard to the claimant's VA disability rating and a treating physician opinion, and (ii) failing to consider all the claimant's impairments throughout the sequential evaluation. The undersigned Magistrate Judge agrees that the ALJ failed to properly evaluate the evidence in the record, and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairment of cam type femoral acetabular type injury with labral tear to the right hip, as well as the nonsevere impairments of affective disorder, anxiety disorder, personality disorder, posttraumatic stress disorder, and depression (Tr. 17-18). Relevant medical records reflect that on March 15, 2016, Dr. Judy Marks-Snelling completed a Hip and Thigh Conditions Disability Benefits Questionnaire ("DBQ") indicating that the claimant experienced flare-ups of hip pain when carrying weight of over fifteen to twenty pounds, and that she could not fully flex or pivot on the right leg at the hip (Tr. 400). Additionally, she had a reduced range of motion of the right hip, including pain on flexion, abduction, adduction, external rotation, and internal rotation (Tr. 401).

The claimant's medical treatment record largely consisted of treatment notes from the Veterans' Administration ("VA"). These records reflect she had been found to be service-connected disabled at 100%, with rated disabilities of PTSD (70%), superficial scars (20%), tinnitus (10%), limited flexion of thigh (10%), and limited motion of ankle (10%) (Tr. 467). A January 14, 2016 physical therapy note indicated that the claimant

ambulated very slowly with guarded movements, and was assessed with chronic right hip/groin pain, as well as a possible nondisplaced tear of the right anterior-superior acetabular labrum with possible CAM impingement (Tr. 530, 775).

On February 11, 2016, Dr. Maggie Law, M.D., wrote a letter stating that the claimant had multiple chronic arthritis and degenerative joint pain, and that the claimant would benefit from working at an office base and not ambulating for a long distance (Tr. 516). Additionally, Dr. Lawson stated that the claimant could lift five to ten pounds at a time, and she stated that the letter was in support of changing the claimant to a lighter position at work (Tr. 516).

The claimant underwent therapy for dealing with symptoms of her PTSD and life stressors, and she continued the therapy throughout the relevant time period. The diagnostic impression from her treatment was PTSD, as well as adjustment disorder with anxious mood (Tr. 500). On January 8, 2016, a PTSD screening was positive, and noted that the claimant was actively engaged in mental health services at that time (Tr. 533-535). Before the claimant stopped working, she reported continued problems with PTSD, exacerbated by experiences at work (Tr. 514, 582, 599, 607, 609, 713). After she retired from her work, she continued to seek therapy related to her PTSD symptoms and their management (Tr. 750, 813).

Dr. Law also treated the claimant for her mental impairments, prescribing medications for management of symptoms including nightmares (Tr. 552, 820-826). On October 27, 2016, Dr. Law wrote a letter stating that the claimant had underlying PTSD with occupational and social impairments with deficiencies more at work, school, family

relations and judgment, thinking, and mood (Tr. 755). Additionally, she stated that the claimant had difficulty adapting to stressful circumstances, including work and/or work-like settings, and that physical trauma of her past hip injury further limited her ability to carry heavy objects. Dr. Law then stated that the claimant would not be able to work in her job like before and would need to retire due to these problems (Tr. 755).

On March 15, 2016, Psychologist Minor Gordon, Ph.D., completed a DBQ as to the claimant's PTSD. He noted that symptoms attributable to PTSD included nightmares, flashbacks, intrusive thoughts, increased startle, panic attacks, hypervigilance, anger outbursts, verbal aggression, reliving, paranoia, and isolation, while her depression had symptoms including anhedonia, sleep disturbance, appetite waxing and waning, and low energy (Tr. 767). He indicated that her impairments caused occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood (Tr. 767). In elaborating on the claimant's mental health history, he noted that the claimant's symptoms were severe and constant, and have a major impact on daily functioning, and he noted that her depression symptoms were secondary to her inability to cope with PTSD symptoms and "impoverished quality of life" (Tr. 769). He further checked boxes indicating that the claimant meets the DSM-5 criteria for PTSD (Tr. 770-771). Based on this examination, Dr. Gordon stated that the claimant needed to seek follow-up treatment, and that she required outpatient psychotherapy (Tr. 772).

State reviewing physicians determined that the claimant could perform light work with no other restrictions, and that her mental impairments were nonsevere (Tr. 66-70,78-82).

In her written opinion at step two, the ALJ determined the above-mentioned severe and nonsevere impairments, notably that the claimant's PTSD was a nonsevere impairment. At step three, she discussed the listing pertaining to major dysfunction of a joint. At step four, the ALJ summarized the claimant's hearing testimony as well as some of the evidence contained in the medical record pertaining to the claimant's physical impairments. As to the VA disability rating, the ALJ assigned it little weight because the 100% disability rating was "due in large part to her PTSD," and that "upon examination with others male and female, her presentation [has] remained unremarkable" (Tr. 21). The ALJ noted that the claimant had worked for a number of years after leaving the military (Tr. 21). The ALJ made no further mention of the evidence in the record related to the claimant's mental impairments, including no mention of Dr. Gordon's assessment (Tr. 19-22). As to Dr. Law's opinion, the ALJ confusingly stated that she agreed with Dr. Law's assessment to the extent the claimant could not return to her prior work (despite ultimately finding that the claimant *could* return to her past relevant work), but that more recent physical examinations had reflected no loss of gait or stance; she thus assigned little weigh to Dr. Law's opinion (Tr. 21).

As an initial matter, the undersigned Magistrate Judge notes that the ALJ wholly failed to connect the evidence in the record as to how she accounted for the claimant's multiple nonsevere mental impairments, particularly her "nonsevere" mental impairment of PTSD that alone rated an 70% disability rating with the VA. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*,

260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two.  He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.").  Because the ALJ did find that the claimant had a severe impairment, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four.  *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].  Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) *and* 20 C.F.R. § 404.1523.  *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two.  His failure to find that additional alleged impairments are also severe is not in itself cause for reversal.  But this does not mean the omitted impairment simply disappears from his analysis.  In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].  But here the error *was not* harmless, because

-8-

although the ALJ mentioned each impairment at step two, the ALJ entirely failed to consider the "cumulative effect of claimant's impairments," at step four. Indeed, she refused to consider evidence regarding impairments she considered nonsevere. *Langley*, 373 F.3d at 1123. *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. Importantly, the ALJ here provided no discussion of evidence to instruct this Court how the assigned RFC, which includes *no* psychologically-based limitations, actually accounts for the claimant's documented impairments including PTSD, depression, and anxiety. The ALJ was not entitled to discount the mental health evidence at step two and then refuse to make findings at step four regarding the individual and cumulative effect of these impairments. *Hawkins v. Chater*, 113 F.3d 1162, 1166-67 (10th Cir. 1997) (Once the claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment."), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990).

The undersigned Magistrate Judge also agrees that the ALJ's treatment of the claimant's disability rating was deficient. The ALJ focused on two things: (i) that the claimant's "presentation" had remained unremarkable, and (ii) that she had been able to work after leaving the military. This focus was to the exclusion of both Dr. Gordon's evaluation and the treatment records containing the claimant's PTSD therapy notes.

"'Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered.'" *Baca v. Department of Health & Human Services*, 5 F.3d 476, 480 (10th Cir. 1993), *quoting Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979). *See also Kanelakos v. Astrue*, 249 Fed. Appx. 6, 8 (10th Cir. 2007) ("[T]he ALJ mentioned the VA rating and appropriately stated that the SSA and VA standards differ. But he completely 'fail[ed] to discuss the significance of the VA's disability evaluation.'") [unpublished opinion], *quoting Grogan v. Barnhart*, 399 F.3d 1257, 1262-1263 (10th Cir. 2005) ("Although another agency's determination of disability is not binding on the Social Security Administration, 20 C.F.R. § 416.904, it is evidence that the ALJ must consider and explain why he did not find it persuasive."), *citing Baca*, 5 F.3d at 480.

An ALJ is not required to give controlling weight to the disability ratings by the VA, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), but she *is* required to determine the proper weight to give such findings by applying the factors in 20 C.F.R. §§ 404.1527, 416.927. This is particularly important where, as here, the claimant largely received treatment at the VA, and the VA disability rating considered the claimant's impairments both singly *and* in combination. Here, the ALJ simply assigned it "limited weight" without any real analysis. *See Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("The [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the

-10-

Commissioner."); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at \*3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.").  Furthermore, while the ALJ noted the claimant's PTSD diagnosis, she ignored the functional evaluations related to the claimant's PTSD, as well as her hip and back impairments.  *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Finally, the medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record."  *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight.  The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the

area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by her treating physicians. *See Drapeau*, 255 F.3d at 1214 (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984). This is of particular concern where, as here, there is a good indication that the ALJ did not properly consider Dr. Law's opinion and treatment notes, choosing instead to focus on positive notes and progress to the exclusion of records reflecting continued functional limitations for both physical and mental impairments. 20 C.F.R. § 404.1520a(c)(1) ("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation.").

Additionally, although an ALJ is not required to give controlling weight to an opinion that the claimant could not return to work, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), she *is required* to determine the proper weight to give that opinion by applying the factors in 20 C.F.R. § 404.1527, specifically in relation to functional limitations. Here, the ALJ ignored the consistent evidence in the record, particularly related to the claimant's PTSD. This ignores Dr. Law's treatment relationship with her and knowledge regarding her limitations that she possessed as part of that treatment relationships. *See Langley,* 373 F.3d at 1119. *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). The ALJ thus improperly evaluated the treating physician opinion that the claimant could not work. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F2d 382, 385-386 (7th Cir. 1984).

Accordingly, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate *all* the evidence in the record. If the ALJ's subsequent analysis results in any changes to

the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 28th day of February, 2019.

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**